Thank you, Your Honor. May it please the Court, I'm James Lawson. I represent the appellant, Mr. Polequaptewa. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal, and I'll keep an eye on the time. Florida Sheriff's deputies illegally entered Mr. Polequaptewa's hotel room, and he filed a motion to suppress the evidentiary fruits of that constitutional violation, including the computer that was seized therein. The primary issue in this case is whether the District Court erroneously denied that motion without holding an evidentiary hearing. There's no dispute that if Mr. Polequaptewa's version of events in Florida is correct, then his Fourth Amendment rights were violated. But the District Court accepted the government's argument that that didn't matter because, purportedly, Mr. Polequaptewa stole the laptop and therefore didn't have standing to bring his motion. That was wrong for two independent reasons. First, regardless of whether the laptop was stolen, it and its contents were suppressible as fruits of the unlawful entry into the hotel room in Florida, and Mr. Polequaptewa undisputedly had standing to challenge that constitutional violation. As the Tenth Circuit put it in Olivares-Rangel, the relevant standing inquiry is whether the defendant's Fourth Amendment rights were violated, not his reasonable expectation of privacy in the evidence alleged to be poisonous fruit. The government ignores that principle, but it does not and cannot dispute the general principle that the exclusionary rule extends to all direct and indirect products of a constitutional violation. Rather, it suggests that this Court's decisions in Wong and Kamen somehow create an exception for stolen laptops, but they don't. In Wong, in both of those cases, it was undisputed that the police came to possess the laptop at issue through lawful means. In Wong, the defendant had abandoned the laptop, and in Kamen, the laptop had been seized through an undisputedly valid warrant of the defendant's residence. The issue in those cases was whether those defendants then had separate independent standing to assert a right over the laptop for a search therein. Mr. Polequaptewa's case is significantly different. Here, the seizure of the laptop from his hotel room was the constitutional violation. The search inside the laptop was the fruit of that violation, and therefore was suppressible, independent of whether or not he had any separate Fourth Amendment standing interest in the laptop itself. So, Mr. Locke, let me stop you there, because I follow where you're going. It seems to me what you're saying is that there are two steps to the analysis in this case. One is, was the entry permitted under the Fourth Amendment, yes or no? And that was never resolved before the district court, because the district court kind of jumped to step two, which is the laptop itself. And it seems that in Wong, which is the case I think you need to distinguish for us, you're saying that there never was a step one analysis, because in Wong, the opinion actually says that there was no fruit of the poisonous tree problem. Then it just focused on what I'll call step two, is the laptop. Is that the way you would look at it? Yes, and I would point out two things about Wong. One was actually the point that the government cites it for is in one single paragraph, and that's dicta. The issue in that case, there was a warrant to search that laptop. There was also a series of warrants. And the final argument made by the defendant was, because the final warrant was the fruits of the prior illegal warrants, then I win on the third warrant. And they had already decided that you lose on the first two warrants. So then it kind of set them aside. And anyway, the laptop was stolen, so you don't have a Fourth Amendment interest. But the key fact with regard to Mr. Polacroft's case is, by the time the court reached that point, they had determined that the laptop was in police possession. I'm sorry, in that case, the laptop was in police possession because it had been abandoned. But there was no preceding constitutional violation that infected the possession of the laptop. Right, because I think of that more as like a step one. Step one is, how did you get into the hotel room? Correct. Step two, did you have probable cause to search the device? And Wong is not a step one, step two case. It's just one step. It's just a laptop. Whereas this one, you actually have to justify how they get in there in the first place. Correct, Your Honor. And I think, as I said, that alone provides standing that required the court to go further and actually have an evidentiary hearing into what happened in Florida. And then if a constitutional violation was found, suppress the fruits of that, including the laptop. But I think it's also important to go on to the second error, which is, if Mr. Poliquop, whether he had an expectation of privacy or a possessory interest in the laptop matters, then the district court erred in not having an evidentiary hearing on that matter. It was clearly an issue in dispute. Mr. Poliquop, he has said in his motion, this was my laptop. He said that repeatedly. The government created a factual dispute by responding with declarations from employees of UC Irvine, Mr. Poliquop was a former employer, saying, no, we think it's our laptop and that you should have given it back when you left our employment. Mr. Poliquop, in his reply brief, continued to say, no, this is my laptop, and I want to cross-examine the government proper witnesses who say otherwise. Given all of that, it was clear there was an evidentiary dispute, and it was improper for the district court to just accept the government proper declarations as true without giving Mr. Poliquop the opportunity to exercise his right of cross-examination. The government is the one that created the factual dispute through its declarations, and that called for cross-examination of the witnesses on those declarations. So, Mr. Locke, let me follow up with this question. Let's assume for a moment I agree with you and my colleagues agree with you that there was a Fourth Amendment violation here, just on fruit of the poisonous tree, that the district court did not resolve whether or not the officers were allowed into that hotel room or not. The remedy you're seeking is a new trial, but there is case law, as the government points out, that the district court can go back and actually kind of do a mini-hearing, or not a mini-hearing, an actual suppression hearing that it should have done before. It can still do it now, and if it finds that the evidence was not in violation of the Fourth Amendment, let's say he finds that the officers had consent to enter the hotel room, then the verdict still stands. I want to get your response to the government's argument that we don't have to redo the whole thing. We basically just do the suppression hearing that should have happened in the first place. Yes, Your Honor, the court's recent en banc decision in Bacon, basically, when I filed the opening brief, the law was different. It was required, a new trial was required. What Bacon says, it's the discretion of each individual panel based on the circumstances presented in each case. And I think in this case, the proper remedy is to reverse the conviction and remand for retrial, regardless of what happens at the suppression hearing that needs to happen. And I think that's because if you look at what happened in this case originally, where the government, I think, wrongly encouraged the district court to skirt having a hearing in the first place, and the district court did that, it demonstrates an incentive to make findings to avoid further consequences down the road. And I think that that incentive is even stronger. As the court put it in Bacon, one of the reasons that can support a remand for a new trial is if there's a danger of post hoc rationalization. And I think this case presents that kind of danger because the district court not only has the incentive to make findings to, you know, make the suppression issue go away, but also if it knows that the consequences of granting that suppression motion is a new trial, unfortunately, that incentive is still there. And I think to create, to serve justice and to both protect the interests of justice, I think the proper remedy in this case would be to actually require a new trial. All right. Do you want to reserve the rest of your time? Yes. Thank you very much. And Ms. Manning, if we could give Mr. Laughlin two minutes for rebuttal. All right. Let's hear from the government in this case. It pleases the court, Ben Mattal on behalf of the United States. The defendant's conviction here should be affirmed. Neither of the issues raised warrant a reversal. I'm going to focus on the motion to suppress because that's what opposing counsel did, but I can address any questions related to the jury instruction issue as well. First, looking at Wong, this is the reason that the government, as well as the district court, found that standing was the primary and first issue that had to be resolved. In Wong, and this, I think if you look at Wong, it's clear that it was not dicta. The Ninth Circuit, this court, was essentially holding on two bases. There was a series of warrants in that case. There was, and it's all in 2000, there was a warrant on January 26th, 28th, and February 2nd. The February 2nd warrant was for the laptop at issue, and the defendant there was arguing that the prior warrants were invalid, particularly the first warrant, the January 26th warrant, was for a warrant of the defendant's residence and his car. Granted, the court in that case found that those warrants were invalid, so there was no argument about the fruit of the poisonous tree, but it also held that in terms of a reasonable expectation of privacy in the laptop, that the defendant had not established that because he didn't have an ownership interest in the laptop. So it's the same situation here. If we were to follow the defendant's logic, then the court in Wong should have looked at the defendant's reasonable expectation of privacy in his home and his cars. The alleged poisonous tree was that first warrant related to his house and his cars, but that was not the case. The court looked at the reasonable expectation of privacy in the defendant's laptop. But it seems to me that if we kind of flip it around, if we follow your line of thinking, it seems to me any time where the object to be searched for is something that's alleged to be stolen, the government can do whatever it wants. It can go into people's homes. It can go into attorneys' offices and search for things. I'm just not sure what the limit is. If we were to accept your rule, your reading of Wong, what happens to the fruit of the poisonous tree doctrine? Your Honor, and I could see that concern where if it was broadly used. But I think looking at these facts, I mean, these facts are very unique. What you have here is a deputy in Florida. And, you know, we don't believe that it was unlawful. But just for the purpose of today's argument, assuming, you know, because there was not a hearing on the issue, assuming that was unlawful, here there was three weeks where a victim company, a third party, had the laptop. The FBI did a separate independent investigation and found probable cause to search the laptop. Well, hold on. Now you're kind of—but hold on a second. I understand now you're giving us reasons why we should affirm. But that's not the fruit of the poisonous tree doctrine. I mean, you're giving us attenuation. And I understand why you want to go there because, Kennelly, I think that's your better argument in this case. But just getting—backing up a second. Are you telling us that Wong says if the laptop or whatever—jewelry, whatever it is, is alleged to be stolen, the police can enter a home, enter an attorney's office, enter any institution and simply seize it without a warrant so long as they can prove that, in fact, that jewelry or that computer was stolen? Is that your reading of Wong? I think—I don't know if our reading of Wong goes that far. I think in terms of what we read in Wong was when you have a fruit of the poisonous tree argument, if there is a stolen laptop—and I think we're limiting Wong to what facts say—is that the reasonable expectation of privacy, the question is whether the defendant has a reasonable expectation of privacy in that laptop. I think the language was clear. Otherwise, the court should have looked to the reasonable expectation of privacy in the defendant's house and cars because that's where the poisonous tree was, at least alleged in Wong. And the court didn't do that. But I thought that court in Wong said that there was no fruit of the poisonous tree problem, whereas in this case, you know, they went into the hotel room without a warrant. I mean, it seems very different to me. Well, I think the court found it on two grounds. It found it that there was no fruit of the poisonous tree argument, but it also found it on standing. The court made two holdings. There's two basis for affirming the denial of the motion to suppress the search of laptop. And that's why I kind of want to look at this as a step one and step two. In Wong—I mean, in this case, step one is how did the officers get into the hotel room? Step one. Step two is did they have probable cause to seize the computer and search it? Two different steps. In Wong, I did not see a step one analysis because it said that there was no problem with the entry. Isn't that how Wong is different? Because if there's no problem in Wong with how they got into the area, the office space, then, yes, all you have to worry about is the laptop. But in this case, we have to worry about how the officers got into the hotel room in the first place. Two different steps. So I'm kind of—I'm trying to see why you think Wong is the same as this case when this case features the entry into the hotel room and Wong does not feature that problem because there were warrants that were upheld. Just mindful of my time. I'll answer the court's question, but I did want to get into some of the other arguments. But I think we read it as two alternative holdings, and I think that portion of the opinion is fairly clear. Again, I agree with you that the court there found that there was no fruit of the poisonous tree because the warrant for the house and the car were valid. But the court also said that the defendant did not have a reasonable expectation of privacy in that laptop. So I think it defended on both grounds. The order of operation, I mean, I think the court is permitted to find alternative holdings, and that's what it did. So I don't think, you know, if the court can find on one ground, that should be sufficient. And I think the district court here found on that ground that was sufficient. Go ahead and move on to the other arguments. I wanted to address briefly, I think it's fairly clear from the record below, that the defendant did not show that his expectation of privacy in the laptop was reasonable. But this court can and should affirm on the independence horse doctrine. This case particularly seems appropriate for that. The exclusionary rules purpose, and the Supreme Court has stated this over and over again, is not to put the government at a worse place than it was before any alleged misconduct. And here you had a deputy in Florida that allegedly committed a constitutional violation. And then you have the FBI doing a separate independent investigation in December of 2014. And there was no, in the defendant's reply brief below, there was no suggestion about that not being independent, that there was insufficient probable cause. And this court's decision in Reed is squarely on point. There, the court actually disagreed with the district court, found that the basis of this search was unlawful, but then on its own, without a decision below, came to the independence horse doctrine and affirmed the denial of the motion to suppress. So this record is clear that the FBI's investigation and its probable cause for the laptop was not based on the alleged seizure of the laptop in Florida. It was entirely independent based on interviews and analysis of evidence that had gathered in December of 2014. And there was no objection below about that issue in the reply brief that the defendant submitted. I think that's one basis that this court can affirm on. The other basis would be harmless error. This court has that authority. And in looking at the evidence that the government submitted at trial, there was three key pieces of evidence that showed the defendant's guilt in this case. One, and we played this right at the opening and our closing, what stuff? I deleted it. That's the point. I mean, he came out and admitted it. It was recorded. And if the court would like to see the video, we can provide it to the court. But it was a clear admission by the defendant that he had done the deletions. So that piece of evidence was there. In addition, all the deletions that were at issue in this case came from third parties. They were not from the laptop that is alleged to be the fruit of the poisonous tree here. They were records from Apple that showed defendant using his personal account to wipe a Bluestone computer. And that was the crux of the charge. That was the first three elements of the charge. It wasn't the sentencing enhancement issue. And then we had a series of third-party providers that all showed the same evidence that he was deleting MailChimp records. We had a Cox record that showed he had deleted it and actually deleted backup files and actually changed the ownership to his personal email. And then we had all the testimony about his motive, him being upset and frustrated about the re-assignment. And none of that had to do with the laptop evidence. Isn't it better on those two points if we just remand it back to the district court and look at your briefs? I mean, they're literally maybe a page or two on these issues. Isn't it just better to let the district court decide these potential ultimate grounds? Your Honor, I don't think that is necessary here. I mean, the independent source doctrine is essentially looking at the affidavit, looking at the warrant, excising anything that was tainted. And the only things that I identified as being potentially tainted were the statements that the defendant made at the hotel room. That wasn't the probable cause. I mean, I think in Reed, this court did that and looked at the warrant and found there was probable cause. And there was no allegation even below in the reply brief that this wasn't independent. And so I think this court can and should affirm on the initial finding but also on independent source doctrine and Harmel's error. Any other questions from my colleagues? Okay. Thank you very much for your argument. Mr. Laughlin, he's back. All right. I thought I lost you there for a second, Mr. Laughlin. You have two minutes. Go ahead. Thank you very much, Your Honor. First of all, we've already delved into why I think the government's interpretation of Wong is wrong. But I would also point to the cases cited at pages 47 and 48 of the opening brief, which the government never really responds to, and that's this court's cases in Pulliam and Tully about the standing of a passenger in a car to assert a challenge of the search of the car if the detention is wrongful. And there's also the case Miller from the 10th Circuit, which is a stolen van that was stopped, and the court said, but if the stop was a constitutional violation, you can still challenge that. So the government, although it reads too much into Wong, doesn't even try to distinguish those cases. So it's not just a matter that Wong doesn't control here. It's that there is precedent and persuasive authority from other circuits that is more applicable and does support our position. Mr. Longman, briefly respond to Mr. Mattall's argument about harmless error, please. Sure, and I think that the strongest evidence I have about that is the fact, as I cited in the reply brief, they said in the pretrial motion, we want to get this evidence in here because it's very strong evidence about his intent and about the loss. And then they finished their rebuttal argument to the jury by saying, notice that the defense in arguing that somebody else did it didn't point to anything on the laptop because the laptop evidence is, quote, all incriminating, and it requires the conclusion that he did those deletions. I don't think that the government can make such an argument to the jury saying, this is really, really important evidence proving our case, and then on appeal take the position that, oh, it's harmless. So that I don't think is a credible argument. Thank you. Unless the court has anything further, I submit. No, thank you very much. Thank you both, counsel, for your briefing and argument. Very interesting case, no doubt about it. And we'll go ahead and move on to the next one. The final case for argument today on calendar is Valenzuela v. City of Anaheim.
judges: Owens, Simon, Lee